JOSEPHINE Y. BREESE AND JOHN MAHER, PROSECUTORS, v. FRANK H. HUTCHINS, WILLIAM L. MATHER, JOHN P. DULLARD, JOSEPH B. HOTTEL AND T. A. KARNO, MEMBERS, AND THE ZONING BOARD OF ADJUSTMENT OF THE CITY OF TRENTON, RESPONDENTS.

Submitted May 13, 1932—Decided Jaunary 17, 1933.

Before Justices TRENCHARD, CASE and BROGAN.

For the prosecutors, *Albert S. Woodruff*.

For the respondents, *Charles E. Bird, Ellis L. Pierson, Scammell, Knight & Reese* and *Katzenbach, Gildea & Rudner*.

PER CURIAM.

In the case before us, a rule to show cause was allowed why a writ of *certiorari* should not issue to review the action of the respondent, board of adjustment of the city of Trenton, revoking two building permits issued by the building department of that city to the prosecutors herein. Josephine Y.

Breese (who may be called the owner of the property in question though in fact she is a life tenant) is a prosecutor and is joined in that capacity by John Maher, a contractor, who, it is alleged, was to have done the contemplated work of building the proposed structure called for by the permits in question.

The property is situated on the southeast corner of Calhoun and State streets in the city of Trenton. On or about December 10th, 1931, two permits were granted for the building of business structures on this location. The petitioners allege, but in the proofs taken under the rule do not offer any testimony to show that between the date of the granting of these permits and February 3d, 1932, obligations were incurred to erect the buildings planned. The testimony further shows that the block in question is a residential street and that no permits to build business structures have been granted in this particular area since the adoption of the zoning ordinance.

On January 14th, 1932, appeals were taken to the board of adjustment by neighboring property owners, some of whom, it appears, have their homes in the neighborhood, protesting against the permits granted by the building department, and on January 20th, 1932, the board of adjustment, after a hearing, sustained the appeal and revoked the permits. On February 4th, 1932, the prosecutors obtained an order to show cause why a writ of *certiorari* should not be allowed to review the action of the board of adjustment in revoking the permits in question, which rule to show cause is now before us.

A zoning ordinance was adopted by the governing body of the city of Trenton on July 8th, 1927. In accordance with the statute governing matters of this kind the ordinance was advertised, detailing the zones and the various uses that were proposed to be adopted by the ordinance in the different zones. There was advertised at the same time a use-district map, called *Exhibit R-1,* in the state of the case, which accompanied said advertised ordinance and was an integral part thereof.

The board of adjustment, in revoking permits that had been granted by the building inspector, relied upon the map, R-1,

which was filed in the office of that board and which was the map that had been published along with the ordinance and prior to the adoption of the ordinance on July 8th, 1927. This use-map, as it may be called, detailed the area in which the property of the petitioner is located as usable for residential purposes. It appears that the map upon which the building inspector relied and which was on file in his office, and which is called P-1, differed from the map, R-1, which was published, and apparently permitted the use which petitioners desired and for which the building inspector issued permits in question.

It is obvious of course that the purpose of the statute, in directing that a proposed ordinance of this character and the map visualizing the proposed uses be advertised, is to apprise those that will be affected thereby, namely, property owners and citizens of the municipality, of the manner in which it is proposed to regulate the building and character of structures in the several areas into which the municipality is divided. It is equally plain, therefore, that since the map which was on file in the office of the adjustment board, or R-1, as it is called, is the map that was published and no protest was made at the public hearing before its adoption, at least as far as the location in question is concerned, it was, therefore, satisfactory to those affected thereby. Those who now protest the action of the building inspector in issuing the permits did not of course object because, apparently, they were satisfied with the area in question being classified as a residential zone. The present petitioner, too, not having protested at that time, as far as the present record discloses, must be considered to have been satisfied with the proposed restricted use of the area to residential purposes only. It does not appear that any permits for business property have been allowed in this area since the adoption of the ordinance in question and we must assume that it is for that very reason that the discrepancy between the map on file in the building department and that filed with the adjustment board office has never been questioned or indeed discovered until this time.

The prosecutors raise the point that the zoning board erred in its finding of fact in the revocation of these permits. This of course is a fact issue and the testimony offered in support of the prosecutors' position is not very persuasive. One witness testified, in an endeavor to justify the map which was in the office of the building inspector (P-1), that he *believed* that map to be the same as the one adopted by the governing body at the time the ordinance was passed. On the other hand, the respondents point out that the property in the area in question constituted the best residential section of the city of Trenton; that the present members of the board of adjustment were members of the zoning commission which prepared the ordinance in question; that the minutes of the city commission indicate the ordinance was adopted as published and that the map published in connection with it was *Exhibit R-1,* which carried with it this legend, "map, designating the zones accompanying ordinance entitled 'An ordinance, &c.,' and forming part thereof, * * *."

There is testimony from Mr. English, a former member of the advisory zoning commission, that the business area was extended to include the property in question, and, contrary-wise, there is the testimony of Mr. Howell that the map known as R-1 was the map submitted to the city commission. Then there is the testimony of the building inspector which would indicate that the map originally submitted by the advisory zoning commission to the governing body was not the map upon which the petitioners now rely.

Under the second point, the petitioners argue that the board of adjustment was without jurisdiction to revoke the permits which had been granted by the building department and rely upon the case of *Losick* v. *Binda,* 102 *N. J. L.* 157; 130 *Atl. Rep.* 537. Since the decision of that case, however, the constitution of this state has been amended, in 1927, to permit the legislature to pass general laws under which the municipalities may adopt ordinances on the question of zoning. The legislature did pass such character of statute in 1928, in the matter of zoning. Under these legislative enactments (*Cf. Cum. Supp. Comp. Stat.* 1925-1930, *p.* 1244), among other

things, power is conferred upon the board of adjustment to review, hear and decide appeals from determinations made by any administrative official in the enforcement of the zoning ordinance. Provision likewise was made that zoning ordinances theretofore adopted are validated as though they had been readopted after the constitutional amendment and under the enabling statute. *Cf. Jannarone* v. *Board of Adjustment of the Town of Nutley, 9 N. J. Mis. R.* 210; 153 *Atl. Rep.* 256.

The petitioners make the further point that if the use-map, or P-1, was actually adopted and it is in dissonance with the ordinance, and the use-district map, R-1, then in fact no zoning ordinance has ever been validly adopted by the governing body of the city of Trenton. On this point, it will suffice to say that the testimony in the case justifies the other conclusion that map R-1 unquestionably was published and accompanied the ordinance in question and was adopted by the governing body of the city of Trenton.

Petitioners urge as a fourth point that the permits cannot be revoked because of the doctrine laid down by the Court of Errors and Appeals in the case of *Freeman* v. *Hague,* 106 *N. J. L.* 137; 147 *Atl. Rep.* 553. There it was held that a permit mistakenly issued for the erection of a garage could not be revoked for the reason that the owner of the permit had substantially changed her position because of her possession of the permit. The facts between that case and the instant one are very far apart. There the work of erecting the garage was under way, excavations had been made and debts contracted; in fact, the contractor had performed services and labors which entitled him to some several hundreds of dollars of compensation. There is no convincing proof in this case that the petitioners have changed their position in any way *because* of the granting of these permits. There are general recitals in the petition to the effect that the petitioner had changed her position *before* these permits were applied for and had made arrangements for work to be done, stores to be rented and the like, when the new business structures were completed and that some negotiations were made after permits issued. There is no attempt made by the prosecutors

to show by oral testimony taken under the rule that *because* of the action of the building inspector monetary losses were incurred.

There is no merit in the other points raised that the revocation was unreasonable and discretionary or that the petitioners' rights under the constitution were violated. No court, on the facts as presented, could come to any other conclusion than that the map, R-1, which we conclude is the map that was published with the ordinance, was the map that was adopted by the governing body at the time the zoning ordinance was finally passed in 1927.

The application for the writ therefore will be denied and the rule to show cause discharged, with costs.